Argued and submitted December 9, 2016, affirmed March 8, 2017

Sandra DIESEL,
*Petitioner,*

*v.*

JACKSON COUNTY,
*Respondent.*

Land Use Board of Appeals
2016039; A163267

391 P3d 973

Ross A. Day argued the cause for petitioner. With him on the brief were Matthew Swihart and Day Law & Associates, PC.

Joel Benton argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

**SHORR, J.**

Petitioner seeks judicial review of an order by the Land Use Board of Appeals (LUBA) affirming the adoption of two ordinances by respondent Jackson County. Those ordinances amended the county's Land Development Ordinance (LDO) to establish, among other things, the types of land on which medical and commercial marijuana cultivation would be permitted. In the first of her two assignments of error, petitioner contends that LUBA erred when it concluded that the ordinances' prohibition of marijuana production on lands zoned "rural residential" was consistent with the county's comprehensive plan. In her second assignment of error, petitioner contends that LUBA erred when it concluded that the ordinances' prohibition of marijuana production on rural residential lands is a "reasonable regulation" of marijuana cultivation authorized by ORS 475B.340. As explained below, we affirm LUBA's decision.

We begin with a brief overview of the relevant law and procedural history. In 1998, Oregon voters approved the Oregon Medical Marijuana Act (OMMA), legalizing under state law the production and sale of marijuana for medical purposes. Or Laws 1999, ch 4. The OMMA was codified in ORS chapter 475B. In 2014, Oregon voters approved Ballot Measure 91, which legalized the production and sale of marijuana for recreational use under state law. Or Laws 2015, ch 614.[1] Following the passage of Ballot Measure 91, the legislature adopted additional legislation enacting changes to both the medical and recreational marijuana statutes, including the provisions at issue in this appeal. Ballot Measure 91 and the subsequent enactments were also codified in ORS chapter 475B.

ORS 475B.370 and ORS 475B.340 are central to this case. As relevant, ORS 475B.370 establishes that marijuana is "a crop" as the term is used in various farming and

---

[1] The manufacture, distribution, dispensation, and possession of marijuana are illegal under federal law, even when authorized by state law. *See* Federal Controlled Substances Act, 21 USC § 801 *et seq.*; *Gonzales v. Raich*, 545 US 1, 29, 125 S Ct 2195, 162 L Ed 2d 1 (2005); *United States v. Oakland Cannabis Buyers' Cooperative*, 532 US 483, 486, 121 S Ct 1711, 149 L Ed 2d 722 (2001) (no medical necessity exception to federal prohibition of marijuana production and distribution).

agriculture statutes. Those statutes include ORS 215.203, which authorizes local governments to adopt "exclusive farm use" zones and defines "farm use," in part, as "the current employment of land for the primary purpose of obtaining a profit in money by raising, harvesting and selling crops." ORS 475B.340 authorizes local governments to "adopt ordinances that impose reasonable regulations" on businesses licensed to produce or process marijuana or sell marijuana wholesale or retail under Oregon's recreational marijuana scheme. ORS 475B.340(2). The statute sets out some exceptions to what types of conditions a local government may impose on those activities and defines the term "reasonable regulations" to include, among other things, "reasonable limitations on where a premises for which a license or certificate for [recreational marijuana production, processing, or wholesale or retail sale] may be located." ORS 475B.340(1)(g).[2]

The facts relevant on review are brief and are drawn from LUBA's order and the local government record.[3] *McPhillips Farm, Inc. v. Yamhill County*, 256 Or App 402, 404, 300 P3d 299 (2013). Following the enactment of the relevant provisions of ORS 475B.340 and ORS 475B.370, the county approved the two ordinances that are the subject of this appeal: Ordinance 2016-3 and Ordinance 2016-4. The two ordinances are identical, except that Ordinance 2016-4 was enacted as an emergency ordinance of temporary duration and has since been superseded by the permanent Ordinance 2016-3. For the sake of clarity, we refer to both the ordinances as "the ordinance" for the remainder of this opinion. The ordinance amended the county's LDO, which regulates land use within the county, to include various

---

[2] ORS 475B.500 similarly authorizes "reasonable regulations" on *medical* marijuana production and, as relevant, similarly defines "reasonable regulations" as including "[r]easonable limitations on where the marijuana grow site of a person designated to produce [medical marijuana] *** may be located." The zoning provisions at issue in this case treat recreational and medical marijuana production the same. Accordingly, and because petitioner focuses her arguments on the recreational-use statutes, we similarly refer primarily to those statutes in our analysis.

[3] We note that petitioner asserts that, as a factual matter, marijuana was "an outright permitted use" on rural residential land in the county before the enactment of the ordinances, while respondent asserts that it was not. We do not decide that issue, however, as it is immaterial to our conclusion that LUBA's order was not "unlawful in substance."

regulations on marijuana-related land use. Among various changes it made, the ordinance established the types of land on which medical and recreational marijuana production would be allowed and on which types it would be prohibited.[4]

Section 2 of the ordinance, under the heading Legal Findings, states that, as a result of the recent legislative enactments, "recreational and medical marijuana production are considered a 'farm use.' The Board of Commissioners finds the Jackson County Land Development Ordinance does not allow a 'farm use' to occur within the Rural Residential and Rural Use zoning districts." The ordinance amended the LDO to allow marijuana production on lands zoned exclusive farm use (EFU), forest, and general and light industrial. Marijuana production was not authorized on lands zoned rural residential, rural use, urban residential, and commercial.

Petitioner, a resident of Jackson County, testified against the ordinance before the county board of commissioners. After the board of commissioners adopted the ordinance, petitioner appealed to LUBA, arguing that the ordinance was unlawful because it conflicted with the county's comprehensive plan. Petitioner also argued that the ordinance was invalid because it was not a "reasonable regulation" as described and authorized under ORS 475B.340. Specifically, petitioner argued that the county had to demonstrate that it had a "substantial government interest" in adopting the regulation in order for it to be reasonable. LUBA ultimately rejected petitioner's arguments and affirmed the county's adoption of the ordinances. Petitioner's arguments and LUBA's determination of petitioner's assignments of error are discussed in the course of our analysis below.

We begin our analysis with our standard of review. On review, we may reverse or remand a LUBA order only if it is "unlawful in substance or procedure," "unconstitutional," or "not supported by substantial evidence in the whole record as to facts found" by LUBA. ORS 197.850(9).

_____

[4] By their terms, the zoning regulations on marijuana production at issue in this appeal do not apply to marijuana produced in smaller quantities exclusively for personal use.

Petitioner appears to contend in each assignment of error that the LUBA order is "unlawful in substance," in that LUBA erroneously interpreted the law. For that reason, our role is to determine whether LUBA has made a "mistaken interpretation of the applicable law." *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001). Based on our analysis below, we conclude that LUBA correctly interpreted the applicable law.

In petitioner's first assignment of error, she contends that LUBA "erred as a matter of law" when it concluded that the ordinance did not conflict with the county's comprehensive plan. Before LUBA, petitioner argued that, "[t]o the extent the Ordinance prohibits marijuana production (a farm use) on rural residential lands within the County, the Ordinance conflicts with the County's comprehensive plan," and is therefore invalid. *See* ORS 197.835(7)(a) ("[LUBA] shall reverse or remand an amendment to a land use regulation or the adoption of a new land use regulation if * * * [t]he regulation is not in compliance with the comprehensive plan."). Petitioner argued that the county's comprehensive plan "requires that marijuana be allowed to be grown on rural residential lands" and, as evidence, quoted a paragraph from the comprehensive plan that discusses the benefits of small-scale agriculture in rural areas where "parcelization and/or residential development" has occurred. That paragraph states:

> "However, in areas where parcelization and/or residential development has already occurred, small scale agriculture is often the only way to keep land in productive farm use. Encouraging a variety of types of agriculture in the county provides a greater possibility of innovation and resiliency in the agricultural economy."

Additionally, petitioner quoted language from a memorandum and a staff report by the county's Development Services Department in which county staff appear to anticipate that marijuana production would be authorized on rural residential lands.

On appeal, LUBA concluded that petitioner failed to show that the ordinance was inconsistent with the county's comprehensive plan.

> "The provision of the [comprehensive plan] that peti-
> tioner relies on merely describes the predominant farm
> uses in the county and describes small scale agriculture on
> parcelized lands as one of those farm uses. The language
> does not *require* the county to allow marijuana production
> on [rural residential]-zoned land and the county's decision
> to prohibit it on those lands is not inconsistent with any-
> thing in the [comprehensive plan] cited by petitioner."

(Emphasis in original.) LUBA did not address the commen-
tary from the county staff included in the memorandum and
the staff report.

On review to us, petitioner argues that LUBA "erred
as a matter of law" in concluding that the ordinance does
not conflict with the county's comprehensive plan. Petitioner
asserts that the ordinance's prohibition of marijuana pro-
duction on rural residential lands "directly conflicts with
the County's comprehensive plan[,] which states the pur-
pose of rural residential lands is to allow small-scale agri-
culture." We disagree. The language cited by petitioner from
the comprehensive plan is not language of requirement—
neither grammatically nor substantively. As LUBA noted,
the quoted paragraph makes a broad declarative statement,
but does not instruct or require the county to take any par-
ticular action.

Even assuming, without deciding, that the para-
graph does require the county to encourage "a variety of
types of agriculture" in "areas where parcelization and/or
residential development has already occurred," the county's
decision not to allow marijuana production on rural res-
idential lands—just one type of agricultural use—would
not violate that command, because requiring the county to
encourage "a *variety* of types of agriculture" is not the same
as requiring the county to permit *all* types of agriculture.
(Emphasis added.)

Finally, as to the statements by the county plan-
ning staff, petitioner does not argue—nor can she—that
such statements are binding interpretations of the county
comprehensive plan such that they could be understood to
impose a requirement on the county where the text of the
comprehensive plan itself does not. Accordingly, LUBA did

not legally err in rejecting petitioner's arguments related to the county's comprehensive plan.

In petitioner's second assignment of error, she argues that LUBA erred in concluding that the ordinance was a "reasonable regulation" authorized by ORS 475B.340. Petitioner does not contend that LUBA erred in reviewing the evidence; rather, petitioner contends that LUBA mistakenly applied the law. As noted, we therefore review to determine if LUBA's order is unlawful in substance because it made a "mistaken interpretation of the applicable law." *Mountain West Investment Corp.*, 175 Or App at 559.

In her arguments before LUBA, petitioner contended that, because the county did not make a finding in the ordinance declaring "any substantial governmental interest the Ordinance is supposed to promote," the county failed to sufficiently justify its decision not to authorize marijuana production on lands zoned rural residential, making that restriction invalid.[5] Noting that ORS 475B.340 is captioned "Local time, place and manner regulations," petitioner asserted:

> "Of course, the phrase 'time, place and manner' is a term of art in the law to denote the limits to which the government may restrict a right guaranteed a person by law. 'Time, place and manner' regulations are most often litigated in the context of cases involving freedom of speech."

Petitioner then cited a pair of United States Supreme Court cases that each considered whether a government regulation restricting rights guaranteed by the First Amendment to the United States Constitution was "reasonable." Those cases held, respectively, that such restrictions are permissible only where the regulation advances a "substantial government interest," *United States v. Albertini*, 472 US 675, 689, 105 S Ct 2897, 86 L Ed 2d 536 (1985), and the restriction is "narrowly tailored" to that interest, *Ward v.*

---

[5] Petitioner also briefly argued before LUBA that the ordinance was not a "reasonable regulation" because it conflicted with the comprehensive plan. As previously noted, LUBA rejected the argument that the ordinance conflicted with the comprehensive plan, and thus did not address it again under petitioner's second assignment of error. Because we conclude that LUBA did not err in that respect, we also do not address petitioner's argument in connection with her second assignment of error.

*Rock Against Racism*, 491 US 781, 791, 109 S Ct 2746, 105 L Ed 2d 661 (1989).[6] Accordingly, petitioner argued that, in the absence of a sufficient governmental interest, "the Ordinance is nothing more than an arbitrary execution of the County's police powers."

As to that argument, LUBA concluded that petitioner had "not established that marijuana production is a protected interest under the First Amendment," and, therefore, the analogy to First Amendment case law was inapposite.

> "That ORS 475B.340 and 475B.500 use the similar phrase 'reasonable regulation' in listing the kinds of regulations that a county or city can impose on the sale or production of recreational and medicinal marijuana does not mean that the legislature intended to import into review of local zoning codes the doctrines and standards of review that courts have applied to First Amendment speech cases."

On review, petitioner argues that LUBA erred as a matter of law and generally repeats the same argument, asserting again before us that the ordinance is invalid because the county failed to make a finding that identified "any substantial government interest" advanced by the zoning decision.

We agree with LUBA that petitioner's citation to First Amendment case law is unavailing. Petitioner cites no authority for the proposition that a county's decision to prohibit marijuana production in some zoning districts, but not others, is subject to heightened constitutional scrutiny such that the county was required to justify its decision by identifying a "substantial government interest." Here, the county's contested zoning decisions are authorized, both generally and specifically, by statutes that petitioner does not contend are unconstitutional or otherwise invalid. *See*

---

[6] Petitioner cited a third case in which the Oregon Supreme Court ruled that an order of the Oregon State Board of Barber Examiners setting the minimum price a barber could charge for a haircut at $0.75 was a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Christian et al. v. La Forge*, 194 Or 450, 477, 242 P2d 797 (1952). Petitioner cites *Christian* again on appeal to argue that "[a] legislative action which is arbitrary is by definition unreasonable." However, petitioner makes no arguments under the Fourteenth Amendment, and we conclude that neither the facts nor holding of *Christian* inform the legal issue in this case.

ORS 215.050(1) (authorizing county governments to adopt and revise zoning ordinances); ORS 475B.340 (authorizing local governments to "adopt ordinances that impose reasonable regulations" on the production and sale of recreational marijuana, and listing as an example of such regulations "[r]easonable limitations on where a premises for which a license [to produce marijuana] may be located").

We pause here to note that, based on the arguments presented, we are not deciding what is a "reasonable regulation" of marijuana production under ORS 475B.340. Rather, we merely hold that, contrary to petitioner's contention, Jackson County did not need to demonstrate a "substantial government interest" to reasonably regulate marijuana production on rural residential lands.

We turn to an additional argument that petitioner asserts before us but did not fully develop before LUBA. Petitioner contends that the ordinance, at least as applied to the facts that exist in Jackson County, is unreasonable because, "[b]y making the overwhelming majority of grow sites in Jackson County illegal, the County has managed to effectively eliminate grow sites in Jackson County." We understand petitioner's argument to be that LUBA made a "mistaken interpretation of the applicable law," *Mountain West Investment Corp.*, 175 Or App at 559, when determining what is a "reasonable regulation" *as applied* to the facts existing in Jackson County.

Petitioner did not develop a significant factual record on this issue before LUBA. Before LUBA, petitioner cited a statement that Representative Ken Helm made during deliberations of House Bill (HB) 3400 (2015), the bill that enacted the provisions authorizing and defining "reasonable regulations" on recreational marijuana production. In discussing those "reasonable regulations," Representative Helm stated, in relevant part:

"I want to say a brief thing about what it means to be reasonable because it is a subjective term. * * * The legislative history that is important to discuss is for those jurisdictions which allow medical and adult-use recreational marijuana and do not opt out in some prescribed fashion, they

may not use their local zoning code to effectively eliminate marijuana businesses or growth sites in their communities by, for example, finding zones in which it is very difficult to site these businesses, or putting them on the edge of town where nobody wants to go, or in some other way making it so difficult for these businesses to be sited that the businesses won't site in their communities. That's not reasonable."

Audio Recording, House Third Reading, HB 3400, June 24, 2015, at 1:45:30 (statement of Rep Ken Helm), https://olis. leg.state.or.us (accessed Mar 2, 2017). In her briefing before LUBA, petitioner did not further explain how that legislative history supported her argument. In her oral argument before LUBA, petitioner argued that Jackson County had effectively eliminated sites for growing marijuana in the county by barring such sites in rural residential lands where county residents currently grew medical marijuana.

As to the legislative history cited by petitioner, LUBA concluded that, rather than help petitioner, "that legislative history tends to defeat petitioner's argument." LUBA focused on Representative Helm's statement that, in his view, an unreasonable regulation would be one where a local government attempts to "use their local zoning code to effectively eliminate marijuana businesses or growth sites" by zoning those businesses or grow sites into difficult locations or otherwise "making it so difficult for these businesses to be sited that the businesses won't site in their communities." Audio Recording, House Third Reading, HB 3400, June 24, 2015, at 1:45:30 (statement of Rep Ken Helm), https://olis.leg.state.or.us (accessed Mar 2, 2017). LUBA concluded:

"Given that the county allows marijuana production in the EFU zone and on lands zoned farm and forest, which together comprise more than a million acres in the county, and on industrial zoned land, the concerns stated by that legislator about the reasonableness of zoning regulations do not appear to be present in this case."

LUBA drew the one-million-acre figure from a footnote in the county's brief, which, in turn, relied on statistics presented to the county when it enacted the ordinance.

Petitioner argues to us that, contrary to LUBA's statement, "there are not more than a million acres in the county of land zoned EFU, forest uses and industrial uses." Rather, petitioner argues, the record reflects that there are only 642,661 acres of land in *private ownership* in the EFU, forest resource, and commercial/industrial zoning districts in the county. Petitioner argues further that, "just because the land is *eligible* to grow marijuana does not, in fact, mean it is *available* to grow marijuana," and asserts that, in 2015, only four properties zoned EFU were either sold or listed for sale. (Emphases in original.) Petitioner also asserts that "most marijuana growers in Jackson County are on smaller pieces of land, primarily zoned rural residential," and that, by prohibiting marijuana production on such land, "the County has made the overwhelming majority of grow sites in Jackson County illegal."

Petitioner does not argue that property in the zoning districts where marijuana production is authorized is unsuitable for marijuana production such that the owners of that land cannot engage in that use. Petitioner's argument is that, because only a few such properties happen to have been for sale in 2015, she and others in her position do not have easy access to that land. We note that the only evidence petitioner presents on appeal in support of her assertion that such land is insufficiently available is a statistic drawn from a letter that she herself wrote to the Jackson County Board of Commissioners stating that there were only four EFU-zoned properties that were sold or listed for sale in 2015. However, that assertion says nothing about whether other land was available for rent or lease under some other agreement, let alone the availability of land in the other zoning districts where marijuana production is authorized. Additionally, any zoning decision that prohibits a use in some zoning districts, but not others, will have the effect of making that activity unavailable to certain landowners.

Based on the limited record before LUBA and the narrow argument presented by petitioner to us, we conclude that LUBA did not err in concluding that, as applied to the facts before it, the ordinance was a "reasonable regulation" of marijuana under ORS 475B.340. Here again, petitioner's

argument does not call on us to define what is a "reasonable regulation" of marijuana under ORS 475B.340 for all purposes. Rather, it asks us to decide whether LUBA correctly concluded that this ordinance was reasonable as applied to the limited facts that were presented to LUBA. Even were we to assume that there are closer to 650,000 acres—rather than one million—of land on which a marijuana production business could be sited in Jackson County, petitioner still has not shown that LUBA legally erred in concluding that the ordinance is a "reasonable regulation." *Mountain West Investment Corp.*, 175 Or App at 559.

Lastly, although petitioner argues that the county "has made the overwhelming majority of grow sites in Jackson County illegal" by not authorizing marijuana production on rural residential land, that argument is undercut, first, by petitioner's *own* assertion elsewhere in her brief that the county "was actively encouraging those who are growing on rural residential and rural use lands to make application with the county for a 'non-conforming use verification permit' in order to make legal grow operations located on these lands"; and, second, by evidence in the record indicating that the county did take into consideration and included measures in the ordinance intended to allow marijuana producers on rural residential properties an opportunity to come into compliance with those regulations.

In sum, petitioner has not shown that LUBA's decision "represented a mistaken interpretation of the applicable law." *Mountain West Investment Corp.,* 175 Or App at 559. Therefore, LUBA's order upholding the ordinance was not "unlawful in substance." *Id.*

Affirmed.