Submitted June 26, 2019, reversed and remanded January 13, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CRISTAFER DELANO BOWEN,
*Defendant-Appellant.*

Lake County Circuit Court
16CR05191; A166678

481 P3d 370

Defendant appeals a judgment of conviction for unlawful delivery of marijuana, *former* ORS 475.860(2) (2015), *repealed by* Or Laws 2017, ch 21, § 126, and unlawful possession of more than 32 ounces of usable marijuana, *former* ORS 475.864 (2015), *repealed by* Or Laws 2017, ch 21, § 126. A state trooper stopped defendant for a traffic violation. Upon smelling an odor of marijuana, the trooper extended the stop to question defendant about marijuana, which eventually led to the seizure of a substantial quantity of marijuana as well as other evidence. Defendant moved before trial to suppress the evidence as the product of an unlawfully extended stop. The trial court denied the motion, reasoning that the trooper had reasonable suspicion that defendant was engaged in the crime of unlawful delivery of marijuana, thus permitting the extension of the stop. On appeal, defendant challenges the denial of his motion to suppress. *Held*: The trial court erred in denying defendant's motion to suppress, because the objective facts observed by the trooper did not give rise to reasonable suspicion of unlawful delivery. The extension of the stop therefore violated Article I, section 9, of the Oregon Constitution.

Reversed and remanded.

Robert F. Nichols, Jr., Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Mark Kimbrell, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Philip Thoennes, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Egan, Chief Judge, and Mooney, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

Defendant appeals a judgment of conviction for unlawful delivery of marijuana, *former* ORS 475.860(2) (2015), *repealed by* Or Laws 2017, ch 21, § 126,[1] and unlawful possession of more than 32 ounces of usable marijuana, *former* ORS 475.864 (2015), *repealed by* Or Laws 2017, ch 21, § 126.

A state trooper stopped defendant for a traffic violation. Upon smelling the odor of marijuana, the trooper extended[2] the stop to question defendant about marijuana. During the extension, defendant made incriminating statements that led to the seizure of marijuana and other evidence. Before trial, defendant moved to suppress evidence under Article I, section 9, of the Oregon Constitution. The trial court denied the motion, reasoning that the trooper had reasonable suspicion of unlawful delivery of marijuana, permitting the extension of the stop. *See State v. Arreola-Botello*, 365 Or 695, 706, 451 P3d 939 (2019) (under Article I, section 9, an officer may extend or expand a traffic stop to inquire on unrelated matters only if the officer has independent constitutional justification, such as reasonable suspicion of a specific crime). On appeal, defendant contends that the court erred in denying his motion to suppress. For the following reasons, we reverse and remand.

The only issue on appeal is whether the trial court was correct in concluding that the trooper had reasonable suspicion of unlawful delivery of marijuana, such that extending the stop did not violate Article I, section 9. The facts relevant to that issue reduce to the following: Defendant was driving a rental car from Grants Pass, Oregon, to Denver, Colorado. He was stopped for a traffic

---

[1] All references to "unlawful delivery of marijuana" in this opinion are to *former* ORS 475.860(2) (2015).

[2] After the parties filed their appellate briefs in this case, the Supreme Court decided *State v. Arreola-Botello*, 365 Or 695, 706, 451 P3d 939 (2019), recognizing a subject-matter limitation on traffic stops for the first time. Under current law, it is indisputable that, on the facts of this case, the trooper both "extended" the duration of the stop and "expanded" its subject matter. However, this case was litigated as an extension case, so we use that terminology to accurately describe the parties' arguments and the trial court's ruling. It is a distinction without a difference in this case.

violation while driving on Highway 140 in Lake County. The trooper who stopped him smelled an "obvious" odor of "marijuana" upon approaching the car. Defendant did not appear to be impaired or intoxicated. Defendant did appear to be nervous—he had shaky hands and a slightly shaky voice when handing over his driver's license and rental agreement. From training and experience, the trooper knew that Grants Pass is a "source city" for marijuana, that Colorado has a market for "low-cost high-quality marijuana out of Oregon," and that people "commonly" use rental cars to unlawfully transport marijuana to avoid the risk of forfeiting their own vehicles if caught.

Based on that information, the trooper subjectively believed that he had reasonable suspicion that defendant was engaged in unlawful delivery of marijuana, and he began questioning defendant about marijuana, thus extending the stop.[3] Defendant eventually admitted to having about 15 pounds of marijuana inside luggage in the back of the car that he was being paid to transport to Denver. That admission led to the seizure of 17 pounds of marijuana and other incriminating evidence.

The reasonable-suspicion standard "is met when an officer can point to specific and articulable facts that give rise to a reasonable inference that the defendant committed or was about to commit a specific crime or type of crime." *State v. Maciel-Figueroa*, 361 Or 163, 165, 389 P3d 1121 (2017). The officer must have a subjective belief that is objectively reasonable under the totality of the circumstances. *State v. Kreis*, 365 Or 659, 665, 451 P3d 954 (2019). "A court's review of a stop is based on the record made concerning the officer's actual belief that the defendant may have committed a crime and the basis for that belief—the specific facts,

---

[3] We omit from our discussion two facts articulated by the trooper as contributing to his suspicion, which the state cites as supporting reasonable suspicion, but which the trial court properly disregarded: defendant's initial denial that he had any marijuana in the car, and defendant's shifting explanations about the reason for his travel. Those statements were made by defendant in response to questioning during the extension. Information obtained during "the unlawfully extended part of the stop *** cannot be used to justify the unlawful extension." *State v. Rodgers*, 219 Or App 366, 373, 182 P3d 209 (2008), *aff'd*, 347 Or 610, 227 P3d 695 (2010).

articulated by the officer, that led him or her to believe that the defendant may have committed a crime, which we then review as a matter of law for objective reasonableness." *Maciel-Figueroa*, 361 Or at 183 (internal citations omitted). Only the objective component of reasonable suspicion is at issue here.

Reasonable suspicion requires "less than probable cause" but "must be based on more than mere speculation;" a "hunch" is not enough. *Kreis*, 365 Or at 665, 667. The state "need not prove that the articulated facts give rise to a conclusion with certainty that a crime has occurred or is about to occur." *Maciel-Figueroa*, 361 Or at 184. However, "based on the specific facts known and articulated by the officer, a reviewing court must conclude that the officer's subjective belief could be true, as a matter of logic." *Id.* (citing *State v. Belt*, 325 Or 6, 13, 932 P2d 1177 (1997)) (emphasis omitted). That is, "[w]hen an inference is logically sound, based on [the] presence of sufficient evidence to permit it, the inference becomes available for use as a matter of law, and the finder of fact may find thereby that the inferred fact is present." *Belt*, 325 Or at 13. An officer's training and experience may inform the officer's understanding of articulable objective facts, but it "cannot itself supply the facts." *State v. Aguilar*, 307 Or App 457, 469, 478 P3d 558 (2020); *see also State v. Taylor*, 308 Or App 61, 73, 479 P3d 620 (2020) (an officer's training and experience "cannot take the place of articulable facts").

Here, the trial court found that the trooper subjectively suspected defendant of committing unlawful delivery of marijuana. That offense is committed when an unlicensed person transfers or attempts to transfer marijuana to another person, subject to an exception for one ounce or less of homegrown marijuana. *See former* ORS 475.860(1) (2015) ("Except for licensees and licensee representatives, as those terms are defined in ORS 475B.015, that are engaged in lawful activities, and *except for a person acting within the scope of and in compliance with ORS 475B.245*, it is unlawful for any person to deliver marijuana." (Emphasis added.)); *former* ORS 475B.245(5), *renumbered as* ORS 475B.301 (2017) (exception for "the delivery of not more than one ounce of

homegrown marijuana at a time by a person 21 years of age or older to another person 21 years of age or older for non-commercial purposes"); ORS 475.005(8) (defining "delivery" as "the actual, constructive or attempted transfer, other than by administering or dispensing, from one person to another of a controlled substance, whether or not there is an agency relationship").

We consider each of the specific facts articulated by the trooper, individually and together, to determine as a matter of law whether the trooper's subjective suspicion was objectively reasonable. *Maciel-Figueroa*, 361 Or at 182 (an officer's suspicion must be objectively reasonable under the totality of the circumstances existing at the time of the stop). That is, we must determine whether it was objectively reasonable for the trooper to suspect defendant of unlawful delivery of marijuana.

One of the facts—defendant's nervousness—is not significant to our analysis. As we have recognized repeatedly, "nervousness alone is entitled to little weight when evaluating reasonable suspicion." *State v. Huffman*, 274 Or App 308, 314, 360 P3d 707 (2015), *rev den*, 358 Or 550 (2016); *see also State v. Alvarado*, 257 Or App 612, 629, 307 P3d 540 (2013) ("[D]efendant's anxious behaviors contribute very little to our reasonable suspicion calculus."); *State v. Berry*, 232 Or App 612, 618, 222 P3d 758 (2009), *rev dismissed*, 348 Or 71 (2010) ("[T]here is nothing inherently suspicious about *** being nervous when pulled over by a police officer."). Here, at the beginning of the stop, defendant's hands were shaky and his voice slightly shaky when he handed his driver's license and rental agreement to the trooper. The trial court did not mention that fact in its reasonable-suspicion analysis, nor does the state rely on it, and we agree that such minor indications of nervousness are not significant to the analysis.

As for the fact that defendant was driving a rental car from Grants Pass to Denver, the act of traveling on a public highway known to be part of a "drug trafficking corridor" does not give rise to reasonable suspicion that any particular person traveling on the highway is trafficking drugs.

*State v. Tapp*, 284 Or App 583, 588-89, 393 P3d 262 (2017) ("Although [a police officer] characterized Highway 20 as a 'drug trafficking corridor,' there is no indication that that interstate highway has fallen so out of favor with travelers not trafficking in drugs that it would be reasonable to infer that a person is a drug trafficker simply from his use of the highway."); *see also State v. T. T.*, 308 Or App 408, 436 n 4, 479 P3d 598 (2021) ("Analogously, we have repeatedly held that observations of a suspect going to, or coming from, a known drug house, or their presence in a high crime area bear minimal weight in a reasonable suspicion analysis."). Traveling in a rental car is also an unremarkable act that adds little to the reasonable-suspicion calculus. *Id.* at 436.

As may be readily apparent, this case comes down to the marijuana odor that the trooper smelled upon approaching defendant's car. The crux of the issue is whether the odor of marijuana tipped the facts here into the realm of reasonable suspicion. We conclude that it did not—at least on this record, where the evidence was sparse as to what the trooper actually smelled. Marijuana has been legal for recreational use under state law since 2015. *Diesel v. Jackson County*, 284 Or App 301, 302, 391 P3d 973 (2017) (summarizing changes in Oregon's marijuana laws since 1998). As recently discussed in *T. T.*, our historic treatment of all marijuana odors as equal for purposes of reasonable suspicion was grounded in "the legal status of marijuana as contraband in *any* amount," a premise that no longer applies, requiring us to adjust our analysis accordingly going forward. 308 Or App at 422 (emphasis in original). At the time of the stop here, an adult could legally possess up to eight ounces of usable marijuana, *see former* ORS 475.864(6)(b) (2015), and could legally deliver up to one ounce of homegrown marijuana to another adult.

With that in mind, we note that, beyond the odor of marijuana being "obvious" when the trooper approached defendant's car, there was no evidence as to how strong the odor was. A very small amount of marijuana may create an "obvious" odor, depending on the circumstances. There also was no evidence as to whether the odor was of fresh marijuana (as the trooper's suspicion of delivery might suggest) or burnt marijuana (as his consideration whether defendant

was impaired or intoxicated might suggest). Nor was there evidence about the locus of the odor, such as it coming from defendant, his passenger, the luggage in the back seat, or the trunk.[4] Finally, there was no evidence that the trooper had training or experience that led him to recognize what he smelled as fresh marijuana in a larger quantity. *Cf. T. T.*, 308 Or App at 426 (a trooper smelled a "pretty strong odor" of "green non-smoked marijuana," which he recognized from his training and experience, in a case in which the defendant claimed to have had "an ounce" of fresh marijuana but actually had 39 pounds of fresh marijuana).

We are unprepared to say that, as to any person driving a rental car on a public highway in Oregon that is also used by drug traffickers, *any odor of marijuana* gives rise to reasonable suspicion of unlawful delivery of marijuana. The marijuana laws have changed since defendant was arrested, so there is little point in hypothesizing as to what would have been sufficient to give rise to reasonable suspicion in this case. It is possible that more detailed testimony from the trooper about what he smelled—beyond just an "obvious" odor of "marijuana"—might have tipped the scales, although it is impossible to know what the trooper might have said if questioned in more detail. Regardless, based on the record as it exists, the objective facts articulated by the trooper were insufficient to give rise to reasonable suspicion of unlawful delivery of marijuana. It follows that the trial court erred in denying defendant's motion to suppress.[5]

---

[4] After the first trooper extended the stop, a second trooper arrived with a drug detection dog. The second trooper perceived an odor of marijuana to be "coming from inside the cab of the vehicle out the window of the driver's side." It is unknown whether the first trooper shared that perception, and he is the one who extended the stop, so we do not consider the second trooper's perception, nor does anyone argue that we should.

[5] We note that the crime of out-of-state importing or exporting of marijuana is *not* at issue in this case. In *T. T.*, 308 Or App at 439-40, which involved a traffic stop that took place in October 2017, we held that a strong odor of green marijuana emanating from a vehicle was enough in combination with other facts to give rise to reasonable suspicion of the crime of out-of-state importing or exporting of marijuana, ORS 475B.227(2), a crime that applied at that time (and applies currently) to anyone transporting any quantity of marijuana in or out of the state. By contrast, the stop in this case took place in January 2016, when only a licensee or licensee representative could commit the crime of out-of-state importing or exporting of marijuana. *See former* ORS 475B.185(1) (2015),

Reversed and remanded.

---

*renumbered as* ORS 475B.227 (2017) ("A licensee or licensee representative may not import marijuana items into this state or export marijuana items from this state."). Thus, when the trooper testified in this case that he suspected defendant of "drug trafficking" and believed that there was marijuana in defendant's car that "was leaving the state," the trial court properly interpreted those statements to refer to the crime of unlawful delivery of marijuana, based on the law at the time of the stop. Because the stops in this case and *T. T.* took place relatively close in time, we note the difference in the law to avoid any confusion.