Argued and submitted August 10, 2020; conviction reversed and remanded, otherwise affirmed April 28, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RANDALL MOORE,
*Defendant-Appellant.*

Harney County Circuit Court
18CR41850; A169681

488 P3d 816

Defendant appeals a judgment of conviction for unlawful possession of marijuana, ORS 475B.337(2). Defendant was charged with that crime based on evidence obtained during a traffic stop. On appeal, defendant assigns error to the trial court's denial of his motion to suppress that evidence, arguing that the trooper unlawfully extended the traffic stop by questioning defendant about an odor of unburnt marijuana without reasonable suspicion that defendant was committing a crime. The state argues that, based on a "very strong" marijuana odor and related facts, the trooper had reasonable suspicion that defendant unlawfully possessed marijuana. *Held*: The trooper's testimony relating to the "very strong" odor of "more than just a very small amount" of "unburnt" marijuana—in the absence of any additional indicia that the quantity of marijuana that might have been present was unlawful—is insufficient to support an objectively reasonable suspicion that defendant possessed an unlawful amount of marijuana. Therefore, the trial court erred when it denied defendant's motion to suppress the evidence.

Conviction reversed and remanded; otherwise affirmed.

W. D. Cramer, Jr., Judge.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Conviction reversed and remanded; otherwise affirmed.

Aoyagi, J., dissenting.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for unlawful possession of marijuana, ORS 475B.337(2). Defendant was charged with that crime based on evidence obtained during a traffic stop. Before trial, defendant filed a motion to suppress that evidence, which the trial court denied. On appeal, defendant raises two assignments of error concerning that denial, arguing that (1) the traffic stop was unlawfully extended when the trooper began questioning defendant about an odor of unburnt marijuana—questioning that the parties agree was unrelated to the purpose of the traffic stop—without reasonable suspicion that defendant was committing a crime; and (2) the trial court should have suppressed defendant's statements elicited by the trooper's questioning during the extension of the stop. For the reasons that follow, we agree with defendant. We reject defendant's remaining assignment of error as noted below.[1] Accordingly, we reverse and remand.

"In reviewing the denial of a motion to suppress evidence, we are bound by the trial court's factual findings to the extent that those findings are supported by evidence in the record." *State v. Arreola-Botello*, 365 Or 695, 697, 451 P3d 939 (2019) (citation and internal quotation marks omitted). In accordance with that standard, we state the following facts.

Defendant was driving on Highway 20, traveling from Ontario to Grants Pass. Oregon State Trooper Caldwell stopped defendant's car for speeding. Caldwell approached the car on the passenger side, advised defendant as to the reason for the stop, and obtained defendant's license and insurance information. While defendant looked for the vehicle registration, Caldwell noticed a "very strong odor" of marijuana coming from defendant's car, which Caldwell recognized from his training and experience as "green marijuana, not burnt."

---

[1] Defendant also argues that the trial court erred by failing to acquit him, because his personal vehicle does not qualify as a "public place" for purposes of ORS 475B.337(1)(b) and ORS 475B.015(34). Defendant acknowledges that he did not preserve that error but urges us to review the matter as plain error. We reject that assignment without further discussion.

Caldwell mentioned the marijuana odor to defendant. Defendant responded that he had "less than an ounce" of marijuana in a five-inch by five-inch ceramic container resting on the passenger seat. Caldwell asked defendant, "Would you please mind showing it to me?" Defendant "became very sad" and "deflated," as though Caldwell "just took [defendant's] puppy or something." Defendant then opened the container, whereupon Caldwell "saw what in [his] training and experience was marijuana." Caldwell asked defendant to "please hand the container to me." Caldwell then returned to his patrol vehicle with the container, "took stock of how much marijuana might be in that container," and, based on his training and experience, judged that "it was well more than an ounce."[2] As a result, Caldwell confiscated defendant's marijuana and "issued [defendant] a citation for a violation on the marijuana."

Defendant was subsequently charged with unlawful possession of marijuana, ORS 475B.337(2), based on the marijuana Caldwell discovered during the traffic stop.[3] Before trial, defendant filed a motion to suppress "all evidence from Trooper Caldwell's unlawful conduct," arguing, among other points, that "the traffic stop [of defendant] was unlawfully extended," and that "the odor of green marijuana cannot give rise to reasonable suspicion." In response, the state argued that "this was not an unlawful extension of the stop," and "the fact that Trooper Caldwell could smell the overwhelming odor of marijuana in the car, and there was one sole occupant of the car, that that is reasonable suspicion for a stop."

Notably, at the suppression hearing, Caldwell testified that his nose had been broken three times, which resulted in his inability to smell "very small, minute amounts" of marijuana, such as "half a joint in an ashtray."

---

[2] An Oregon State Police forensic lab later analyzed defendant's marijuana, reporting a net weight of approximately 139.51 grams (*i.e.*, approximately 4.9 ounces) of dried, green marijuana.

For recreational use, under ORS 475B.337, any person 21 years of age or older may lawfully possess one ounce or less of usable marijuana in a public place and eight ounces or less of usable marijuana in the home.

[3] Defendant was also charged with a speeding violation under ORS 811.111. That charge was ultimately dismissed.

Caldwell also testified that he cannot distinguish by smell "three-quarters of an ounce from an ounce-and-a-half," nor can he precisely determine an amount of marijuana based on its smell. Nevertheless, Caldwell explained that the odor he smelled during the stop "was very strong, and usually that indicates that there's more than just a very small amount."

After hearing testimony and argument, the trial court ultimately denied defendant's motion and explained its decision in a letter opinion:

> "[T]he only legal issue that is uncertain in my view is whether the smell of marijuana constitutes reasonable suspicion to investigate further to see if the amount of marijuana is a criminal quantity.
>
> "* * * * *
>
> "I find that the officer had 'reasonable suspicion' as soon as he smelled the green marijuana to investigate further for crimes involving possessing quantities/amounts of marijuana that would be illegal. That is a separate and distinct basis that would allow the traffic stop to be extended to investigate for a crime."

On appeal, defendant argues that "the strong odor of marijuana, absent some other indicia of wrongdoing, did not permit Caldwell to extend the stop by asking to see the contents of the ceramic container." In response, the state argues that "the strong odor of marijuana permitted the inference that defendant possessed a significant amount of marijuana," and that "the remaining things known to Caldwell, including his training and experience, his inability to smell small amounts of marijuana, and defendant's shifting demeanor, supported Caldwell's reasonable belief that defendant possessed an unlawful amount of marijuana." In short, the parties' dispute centers on whether Caldwell's extension of the traffic stop to ask unrelated questions about marijuana was supported by reasonable suspicion that defendant unlawfully possessed marijuana.

Under Article I, section 9, of the Oregon Constitution, "all investigative activities, including investigative inquiries, conducted during a traffic stop are part of an ongoing seizure and are subject to both subject-matter and durational

limitations." *Arreola-Botello*, 365 Or at 712. Accordingly, "an officer is limited to investigatory inquiries that are reasonably related to the purpose of the traffic stop" and may not "ask unrelated questions, unless the officer can justify the inquiry on other grounds." *Id.* Thus, to be lawful, "an extension of a traffic stop to conduct a criminal investigation must be justified by reasonable suspicion of criminal activity." *State v. Hallam*, 307 Or App 796, 806, 479 P3d 545 (2020) (citation and internal quotation marks omitted).

The reasonable suspicion standard "is met when an officer can point to specific and articulable facts that give rise to a reasonable inference that the defendant committed or was about to commit a specific crime or type of crime." *State v. Maciel-Figueroa*, 361 Or 163, 165, 389 P3d 1121 (2017). "The officer must have a subjective belief that the person stopped has committed, or is about to commit, a crime, and that belief must be objectively reasonable under the totality of the circumstances." *State v. Kreis*, 365 Or 659, 665, 451 P3d 954 (2019).

In this case, we do not understand the parties to dispute that Caldwell subjectively believed that defendant possessed an unlawful amount of marijuana. Thus, our task on review is to determine whether Caldwell's belief was objectively reasonable under the totality of the circumstances.

On appeal, the state contends that four facts contributed to Caldwell's reasonable suspicion: (1) Caldwell "has extensive experience investigating marijuana crimes and can recognize the odor of unburnt marijuana"; (2) Caldwell observed a "very strong" odor of marijuana coming from defendant's vehicle; (3) Caldwell cannot smell "very small, minute amounts" of marijuana, such as "half a joint in an ashtray"; and (4) defendant became "sad" and "deflated" when Caldwell stated that he could smell marijuana. As we conclude below, those facts—considered in their totality—do not give rise to an objectively reasonable suspicion that defendant possessed an unlawful quantity of marijuana.

The first three facts advanced by the state—*i.e.*, Caldwell's ability to recognize the odor of unburnt marijuana, his observation of a "very strong" odor of unburnt marijuana coming from defendant's vehicle, and his inability

to detect "very small, minute amounts" of marijuana—are interrelated. We conclude that those facts—without some additional indicia that an unlawful amount of marijuana might have been present—do not support a reasonable suspicion that defendant possessed an unlawful quantity of marijuana.

"Marijuana has been legal for recreational use under state law since 2015." *State v. Bowen*, 308 Or App 505, 510, 481 P3d 370 (2021). "[O]ur historic treatment of all marijuana odors as equal for purposes of reasonable suspicion was grounded in 'the legal status of marijuana as contraband in *any* amount,' a premise that no longer applies, requiring us to adjust our analysis accordingly going forward." *Id.* (quoting *State v. T. T.*, 308 Or App 408, 437, 479 P3d 598 (2021) (emphasis in original)). Thus, as we recently explained in *T. T.*,

> "the smell of marijuana [] generally no longer has the significance it once had as a basis for reasonable suspicion, in light of decriminalization. As the legal status of cannabis in Oregon has changed, so too does the role that the odor of marijuana plays in the reasonable suspicion calculus. * * * [A] strong odor can signal the presence of marijuana, but not necessarily the presence in a quantity that is illegal for persons 21 and older to lawfully possess. For that reason, *odor adds only that much to the calculus—that some amount of marijuana may be present.*"

308 Or App at 437 (emphasis added).

In *T. T.*, we concluded, among other things, that a state trooper did not have reasonable suspicion to believe that the defendant unlawfully possessed marijuana. *Id.* at 428. The defendant in *T. T.* was one of two juvenile passengers in a car driven by an adult. *Id.* at 411. The trooper in *T. T.* stopped the defendant's car for speeding. *Id.* When the trooper approached the passenger-side window, he smelled a "pretty strong odor" of "green, non-smoked marijuana," *id.* at 426, but he did not see any marijuana inside the car, *id.* at 411. The trooper acknowledged that "he was not able to 'tell exactly how much marijuana was present by odor alone,'" but that a strong odor of marijuana "'typically means that there's a larger quantity than a user amount,'" which the trooper described as "'a couple of grams, like what would

fill up a joint.'" *Id.* at 426 (brackets omitted). We concluded that those facts "did not make it objectively reasonable to believe that the underage passengers" possessed any marijuana, and that, "considering that it is lawful for persons 21 and over to possess some amount of marijuana in Oregon, *the odor of usable marijuana in the vehicle was unremarkable.*" *Id.* at 428 (emphasis added).

In the instant case, the first and second facts enumerated by the state pertain to Caldwell's testimony that he recognized—based on his experience and training—a "very strong" odor of "unburnt" marijuana coming from defendant's car. Yet, as with the "pretty strong odor" of "green" marijuana in *T. T.*, those facts establish only that "some amount of marijuana may be present," *id.* at 437, and they contribute very little to the reasonable suspicion analysis here, *id.* at 440 ("The odor of marijuana *** contribut[es] very little to the reasonable suspicion analysis for general crimes of possession or delivery.").

To be sure, Caldwell's testimony was that the unburnt marijuana odor was "very strong." But there is nothing in the record, including testimony about Caldwell's training and experience, that suggests that the "very strong" odor described by Caldwell indicated the presence of an *illegal* amount of marijuana. Put differently, a legal amount of marijuana could just as well have a "very strong" odor, and the qualifier "very strong" is insufficiently descriptive to support a reasonable inference that the amount smelled by Caldwell was an illegal amount, rather than a legal amount.[4]

We acknowledge that "reasonable suspicion is a relatively low barrier," and "is a less demanding standard than

---

[4] We observe, as has the Massachusetts Supreme Court, that in the context of judging whether illegal marijuana activity is occurring, "characterizations of odors as strong or weak are inherently subjective; what one person believes to be a powerful scent may fail to register as potently for another." *Commonwealth v. Overmyer*, 469 Mass 16, 21-22, 11 NE3d 1054, 1059 (2014) (citing Richard L. Doty *et al*, *Marijuana Odor Perception: Studies Modeled from Probable Cause Cases*, 28 Law & Hum Behav 223 (Apr 2004) (identifying traits, such as gender and age, and factors, such as temperature, that may influence ability to smell, and noting that "the strength of a smell is thus at best a dubious means for reliably detecting the presence of a criminal amount of marijuana").

probable cause." *State v. Taylor*, 308 Or App 61, 66, 479 P3d 620 (2020) (citations and internal quotation marks omitted). Nevertheless, the reasonable suspicion standard requires specific and articulable facts that make the suspicion a reasonable inference rather than a hunch or a guess. *See, e.g., Kreis*, 365 Or at 667 ("Although officers reasonably may draw inferences about human behavior from their training and experience, an officer's 'hunch' based on training and experience is, by itself, insufficient to form a basis for reasonable suspicion." (Internal citation and quotation marks omitted.)).

Here, because "the possession and transport of marijuana, in a variety of amounts and forms, is now legal," *T. T.*, 308 Or App at 424, a "very strong odor" of unburnt marijuana is not a specific enough articulation to adequately support reasonable suspicion that marijuana was therefore present in defendant's vehicle in an unlawful quantity, and that the state's intrusion into defendant's liberty was therefore justified. *See State v. Walker*, 277 Or App 397, 401, 372 P3d 540, *rev den*, 360 Or 423 (2016) (explaining that a hunch or intuition is insufficient to justify an officer's interference with a person's liberty).

In articulating the reasonable suspicion standard, we have also explained that "although an officer is not required to rule out all innocent explanations for a person's conduct before stopping the person, *** [t]he fact that the person's conduct is consistent with criminal activity is not necessarily enough to give rise to reasonable suspicion." *State v. Martin*, 260 Or App 461, 476, 317 P3d 408 (2014). And where a person's conduct is "consistent with criminal activity, but is not too remarkable, it will not support a stop." *Id.* (internal quotation marks omitted).

Here, though a "very strong" odor of unburnt marijuana may be consistent with criminal activity, "given the legality of an adult possessing some amount of marijuana in Oregon, the smell of marijuana in a car in which an adult is present is no longer remarkable." *T. T.*, 308 Or App at 427. Because it is no longer remarkable, Caldwell's testimony as to the smell of marijuana, without more, does not support a reasonable suspicion that defendant possessed an *unlawful* amount of marijuana. *See id.* at 437 (explaining that "odor

adds only that much to the calculus—that *some* amount of marijuana may be present" (emphasis added)).

The third fact enumerated by the state—which pertains to Caldwell's testimony that he cannot detect "very small, minute amounts" of marijuana—is likewise unavailing. Caldwell testified that the "very strong" odor he smelled indicated the presence of more than "a very small amount" of marijuana, which he described as "half a joint in an ashtray." But that information—just like the "strong odor" in *T. T.* that indicated more "than a user amount," such as "what would fill up a joint"—does not support reasonable suspicion that defendant possessed an *unlawful* amount of marijuana.

In short, Caldwell's testimony relating to the "very strong" odor of "more than just a very small amount" of "unburnt" marijuana—in the absence of any additional indicia that the quantity of marijuana that might have been present was unlawful—is insufficient to support an objectively reasonable suspicion that defendant possessed an unlawful amount of marijuana.

The fourth and final fact advanced by the state—*i.e.*, that defendant's demeanor became "sad" or "deflated" when Caldwell asked about marijuana—deserves no weight in this case. That is because Caldwell's questions about marijuana were not reasonably related to the purpose of the traffic stop and could not be used to justify Caldwell's extension of the stop to ask such questions. *See Arreola-Botello*, 365 Or at 712 (officers are precluded from asking questions "unrelated to the purpose of the [traffic stop] without independent constitutional justification").[5]

---

[5] Even if we were to consider defendant's demeanor in response to Caldwell's questions about marijuana, that fact would deserve very little weight here. Although an officer's observation of a suspect's demeanor can be relevant to the reasonable suspicion calculus—particularly where it is consistent with criminal activity—in this case, defendant's demeanor was not itself indicative of criminal conduct and could be ascribed to any number of things. *Compare, e.g.*, *State v. Holdorf*, 355 Or 812, 829, 333 P3d 982 (2014) (the defendant's "nervous, fidgety demeanor" weighed in favor of reasonable suspicion where officer explained it was consistent with methamphetamine intoxication), *with, e.g.*, *State v. Maciel*, 254 Or App 530, 540 n 4, 295 P3d 145 (2013) (according little weight to the defendant's change in demeanor after the officer asked about drugs, because "that change in demeanor could be ascribed to any number of things," including "the sudden realization that a mere traffic stop is escalating into a criminal investigation").

In sum, the foregoing facts—considered in their totality—do not give rise to an objectively reasonable suspicion that defendant possessed an unlawful amount of marijuana. Thus, defendant's traffic stop was unlawfully extended.

For the reasons above, we conclude that the trial court erred when it denied defendant's motion to suppress the evidence obtained during the extension of that stop. *See State v. Middleton*, 294 Or App 596, 600, 432 P3d 337 (2018) ("Incriminating evidence that police obtain during an unlawful extension of a stop is subject to suppression."). Additionally, because defendant's traffic stop was unlawfully extended, we further conclude that the trial court erred when it did not suppress defendant's statements elicited by the trooper's questioning during the extension of the stop. *See State v. Rodgers*, 219 Or App 366, 371, 182 P3d 209, *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010) (noting that evidence derived from questioning that occurs during an unlawfully extended stop is subject to suppression). Accordingly, we reverse defendant's conviction and remand.

Conviction reversed and remanded; otherwise affirmed.

**AOYAGI, J.,** dissenting.

In my view, the state trooper in this case had reasonable suspicion that defendant possessed more than one ounce of usable marijuana. I therefore would affirm the trial court's judgment and, accordingly, respectfully dissent.

This is our fifth time in four months addressing the significance of marijuana odor in creating reasonable suspicion of a crime. In *State v. T. T.*, 308 Or App 408, 422-25, 479 P3d 598 (2021), we recognized that the legalization of marijuana under state law requires a more nuanced approach to marijuana odors than we took in the past when marijuana possession was universally unlawful. In *T. T.*, an adult and two juveniles were travelling in a car, and, upon approaching the car, a state trooper smelled a "pretty strong odor" of "green non-smoked marijuana." *Id.* at 426. He eventually searched the car, finding 39 pounds of marijuana inside luggage in the

trunk. *Id*. at 412. One of the youths was adjudicated delinquent and, on appeal, challenged the denial of his motion to suppress. *Id*. at 410. We agreed with the youth that the trooper lacked reasonable suspicion that the youth possessed marijuana, because it could have been the adult driver who possessed it, and, whereas a youth cannot possess any marijuana lawfully, an adult may possess varying amounts lawfully depending on the circumstances. *Id*. at 425-28. We held that the trooper had reasonable suspicion that the youth was engaged in unlawful importing of marijuana from California to Oregon, however, and, on that basis, affirmed the denial of the motion to suppress. *Id*. at 428-38, 440.

Shortly thereafter, in *State v. Bowen*, 308 Or App 505, 510-11, 481 P3d 370 (2021), we held that a state trooper lacked reasonable suspicion of the crime of unlawful delivery of marijuana, where the trooper smelled an "obvious" odor of marijuana upon approaching a rental car driven by the defendant and containing a passenger. We explained that seeing a rental car on a public highway does not create reasonable suspicion of drug trafficking, even if the highway is known to be part of a "drug trafficking corridor." *Id*. at 509-10. As for the marijuana odor, the evidence was "sparse" as to what the trooper actually smelled—he did not say whether the odor was of fresh or burnt marijuana, identify where the odor seemed to come from, or indicate having any training or experience in differentiating marijuana odors. *Id*. at 510-11. On that record, we held that the trial court had erred in denying the defendant's motion to suppress. *Id*. at 511. Similarly, in *State v. Arivett*, 309 Or App 480, 487-88, 483 P3d 29 (2021), we concluded that a state trooper lacked reasonable suspicion of the crime of unlawful possession of marijuana, such that the defendant's motion to suppress should have been granted, where the only significant fact was that the trooper smelled a "moderate smell of marijuana" upon approaching the vehicle.[1]

---

[1] The trooper in *Arivett* did not testify as to whether he smelled fresh or burnt marijuana. 309 Or App at 486. Also, the opinion does not mention whether the "unlawful" threshold at issue was one ounce or eight ounces. *See id*. at 486-88. That distinction did not matter to the reasonable-suspicion analysis in *Arivett*, given the meager evidence about odor, nor did it matter to the defendant's conviction, in that the challenged search resulted in the seizure of five pounds of marijuana. *See id*. at 483.

Most recently, in *State v. Robinson*, 310 Or App 644, 660, 486 P3d 28 (2021), we held that a state trooper had reasonable suspicion of the crime of unlawful importing of marijuana, based on a combination of facts, one of which was a "very strong smell" of "fresh marijuana" coming from the vehicle, such that the trial court correctly denied the defendant's motion to suppress.

In this case, the majority holds that the trooper lacked reasonable suspicion of the crime of unlawful possession of marijuana. I disagree. As a preliminary matter, it is critical to note that the relevant quantity for possession in this case was one ounce. It is presently an open question under Oregon law whether a private vehicle on a public road is a "public place," such that an adult may lawfully possess up to one ounce of usable marijuana in the vehicle, ORS 475B.337(1)(b), or not a "public place," such that an adult may lawfully possess up to eight ounces of usable marijuana in the vehicle, ORS 475B.337(1)(c). However, this case was charged and prosecuted on a one-ounce theory, which defendant never challenged in the trial court, so the reasonable-suspicion analysis must necessarily be judged against a one-ounce standard.[2]

The marijuana odor described by the trooper in this case was sufficient to give rise to reasonable suspicion that defendant possessed more than one ounce of usable marijuana. Defendant was alone in the car, so, unlike the youth in *T. T.*, there was no question that he was the one who possessed the marijuana. And there was much more specific evidence about what the trooper smelled here than in *Bowen* or *Arivett*—the marijuana odor was "very strong" (whereas it was merely "obvious" in *Bowen* and "moderate" in *Arivett*), it was the odor of green marijuana (an important detail not present in *Bowen* or *Arivett*), and there was evidence that the trooper could distinguish between smaller and larger quantities of marijuana, even if he could not do so with

---

[2] I agree with the majority's rejection of defendant's first assignment of error. That is, I agree that the trial court did not plainly err in failing to acquit defendant of unlawful possession, *sua sponte*, based on a car not being a "public place" and the lawful amount therefore being eight ounces rather than one ounce. Any error was not plain.

enough precision to differentiate three quarters of an ounce from one and one-half ounces.

I do not read *T. T.*—which must be understood in the context of the legal issues presented in that case—to have swung the pendulum so far that, whereas previously *any* marijuana odor would create reasonable suspicion of a crime, now *no* marijuana odor creates reasonable suspicion of unlawful possession by an adult. It is important to note that *T. T.* contains no holding regarding reasonable suspicion as to an adult. *T. T.* was a juvenile delinquency case, in which the youth could not possess (or import) *any* amount of marijuana. We discussed adult marijuana possession solely in the context of explaining why the presence of other people in the car, including an adult, precluded reasonable suspicion of possession by the youth. In that context, the strength of the odor and the particular evidence about the odor were minimally relevant, because, regardless how much marijuana the adult might possess, the trooper lacked reasonable suspicion that *the youth* possessed marijuana.

To the extent that the majority leaves open the possibility of establishing reasonable suspicion of unlawful possession through more refined officer testimony—such as testimony that an officer has been trained to identify marijuana quantity by odor alone and can tell if an odor is associated with an unlawful quantity—I think that requires too much. Even assuming arguendo that such precision is possible given all the variables involved, to require it seems to me to slip from reasonable suspicion into probable cause. In my view, the evidence here was enough to establish reasonable suspicion, which we have consistently described as a low bar, even if it falls well short of probable cause.

For those reasons, I believe that the trial court correctly denied defendant's motion to suppress, would affirm the judgment, and respectfully dissent.