Argued and submitted July 17, 2020, affirmed April 14, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EUGENE JAMAR ROBINSON,
*Defendant-Appellant.*

Jackson County Circuit Court
17CR64232; A168483

486 P3d 28

Defendant was pulled over for speeding. The state trooper smelled a strong odor of marijuana coming from the car, and he saw a couple bags of loose marijuana inside the car. He investigated and eventually searched the car, discovering MDMA, cocaine, oxycodone, and cash. Defendant appeals a judgment of conviction for unlawful delivery of oxycodone, ORS 475.830. He assigns error to the trial court's denial of his motion to suppress, arguing that the trooper (1) unlawfully expanded the scope of the traffic stop and (2) conducted a warrantless search of the car pursuant to an illegal arrest. The state responds, first, that the expansion of the traffic stop was supported by reasonable suspicion and, second, that the warrantless search was not conducted incident to arrest but was, instead, supported by probable cause. *Held*: The expansion of the traffic stop to inquire about marijuana was supported by reasonable suspicion and, therefore, lawful. The Court of Appeals declined to review defendant's unpreserved argument that the stop was unlawfully expanded when the trooper asked questions about the rental car and defendant's travel plans. The court rejected defendant's argument that the warrantless search of his car was performed pursuant to an illegal arrest.

Affirmed.

David G. Hoppe, Judge.

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Kirsten M. Naito, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Defendant appeals from a judgment of conviction, following entry of a conditional plea of guilty, for unlawful delivery of oxycodone, ORS 475.830. The evidence against defendant was discovered after a state trooper stopped defendant for speeding and, in the course of that stop, asked defendant questions related to the import and export of marijuana. On appeal, defendant assigns error to the trial court's denial of his motion to suppress evidence, arguing that (1) the trooper lacked reasonable suspicion to expand the scope of the traffic stop and (2) the search of the car was performed pursuant to an illegal arrest. For the reasons explained below, we conclude that the trial court did not err. We affirm.

We review a trial court's denial of a motion to suppress for legal error. *State v. Kelly*, 305 Or App 493, 494, 469 P3d 851 (2020). We are bound by the trial court's factual findings so long as they are supported by the evidence in the record. *Id*. In the absence of express factual findings, we presume that the court resolved any disputed facts consistent with its ultimate conclusion. *Id*. We state the facts consistent with that standard, drawing from the record created at the suppression hearing.

Senior Trooper Peterson of the Oregon State Police was parked alongside Interstate 5 when, just before midnight, he clocked defendant's speed with his radar equipment at 66 mph in a 55-mph zone. The car had Washington state license plates. Peterson activated his overhead lights to pull the car over and initiated a traffic stop. Defendant, the driver of the car, did not immediately stop; he continued for approximately one mile, exited the freeway, and made several right-hand turns before coming to a complete stop in a Burger King parking lot. The length of time it took for defendant to pull over "heighten[ed Peterson's] senses a little bit" because, in his professional law enforcement experience, such delays typically suggest "criminal activity" such as preparing to elude or "stashing * * * a handgun or a controlled substance."

Once defendant came to a complete stop, Peterson approached the passenger side window. When defendant

rolled down the window, Peterson smelled a "very strong odor" of "fresh marijuana" emanating from the car. Peterson testified more specifically:

"Q:    And why do you describe [the odor] as very strong?

"A:    Well, that's because as the window rolls down and the odor was so emanating that from outside the window that I could just smell it extremely strong.

"So I've walked up to a car and smelled a faint odor, which is you could smell it a little bit, but it's not quite there, and that's typically associated with a gram or a couple grams of marijuana. But this marijuana smell was strong and based on my training and experience with seizing several thousand pounds of marijuana that this was a larger quantity than a couple grams of marijuana."

Peterson also testified that he had been doing drug interdiction work for eight years and that, over the course of the year prior to this stop, he had "seized approximately 400 pounds of marijuana."

Peterson asked defendant for his driver's license. Defendant was unable to produce a driver's license, and instead presented a California identification card. When Peterson asked defendant if the car belonged to him, defendant answered that it was a rental. Peterson requested the rental agreement. While defendant was "looking for the rental agreement," Peterson noticed a bag of "loose marijuana" on the front passenger seat and another bag containing what appeared to be "4 to 5 ounces of marijuana" on the floorboard by the backseats.

Defendant could not find the rental agreement, and he explained that it had been his brother who had rented the car two weeks before. According to Peterson, defendant explained that he had been in Washington "and then came back to California, and now [was] heading back to Washington." At that point, Peterson believed that defendant was likely involved in the criminal import/export of marijuana. He testified as to the reasons for that belief:

"I know based on my training and experience that a lot of, we'll just say that marijuana and illegal substances come from different cities out of California. Mostly San Jose, Oakland, Los Angeles, Fresno, Modesto area, a lot of cities

hub illegal narcotics and it gets transported up north and east.

"Based on all the observations that I saw, the strong odor of marijuana, the rental vehicle that wasn't rented to him, the marijuana that I could see in plain sight, I felt that there was a very strong odor of marijuana that was possibly associated with a criminal amount of marijuana. I could not tell how much marijuana was in the car.

"Based on [defendant's] statements, him coming from California and going up to Washington, led me to believe that more likely than not he was possibly transporting an illegal amount of marijuana."

Peterson told defendant to "[s]it tight for a minute." He then ran his identification card and requested backup. When he returned, Peterson inquired further as to defendant's travel history. Defendant responded that earlier he had visited his brother in Tacoma, Washington, and then had driven back to California, and that he was now "heading back to [Washington to] take the [rental] car back." He explained that he was going "back and forth" because he was trying to "get a job up there" at a Costco store. Peterson asked if he was "working with Costco right now" or was "in between." Defendant replied that he had "put in [his] two-week notice," and was "going back and forth trying to move up there to their business center at the moment." Peterson asked defendant to clarify that he was "headed up to Tacoma just to return the car" even though he lived in Oakland and did not live in Tacoma. Defendant responded that he was moving up to Tacoma soon with his fiancée.

Peterson then told defendant that his "big concern tonight is the strong odor of marijuana." Defendant explained that he had been "smoking a blunt" earlier and that he had brought the marijuana he had "right here" from California. Peterson asked additional questions of defendant about his travel plans, and then asked specifically whether there was "any more marijuana in the car." Defendant said, "No," showing Peterson the bags of marijuana that were in plain view. Peterson explained that the "import/export [of] marijuana is a crime in the state of Oregon *** depend[ing] on how much you have." He requested, and initially obtained, defendant's permission to search the car. Defendant quickly

rescinded his consent to search, however, when Peterson explained that he wished to search "the whole car."

Peterson proceeded to search the car without consent, explaining to defendant that he had

"probable cause because more likely than not you have a criminal amount of marijuana in your car. Okay. Strong odor of marijuana. You confessed to me that you brought marijuana over from state lines from California into Oregon. * * *

"You're driving a rental car that's not rented to you. You don't have any rental agreement with it. Okay. Right now, you're in between jobs. In 2012, you were convicted or charged with cultivating marijuana and selling it. Okay.

"So I'm going to search your car on probable [cause.]"

In the trunk of the car, Peterson discovered three 3,4-methylenedioxymethamphetamine (MDMA) pills, a gram of cocaine, $10,000 in cash, and over 500 oxycodone pills. He found a total of 47 grams, approximately 2 ounces, of marijuana. Peterson placed defendant under arrest.

Defendant was charged with unlawful delivery of oxycodone, ORS 475.830, unlawful possession of oxycodone, ORS 475.834, unlawful possession of MDMA, ORS 475.874, and unlawful possession of cocaine, ORS 485.884(2)(a). Before trial, defendant moved to suppress the evidence, challenging the bases for both the extension of the traffic stop and the warrantless search of his car. He argued that, although the initial traffic stop was lawful, the extension of the stop and the investigation concerning marijuana trafficking was not supported by reasonable suspicion. In addition, he argued that Peterson did not have authority to conduct a warrantless search of defendant's car pursuant to the automobile exception.

The trial court denied defendant's motion to suppress as to the evidence of controlled substances found in the trunk of his car.[1] The court found that "defendant was lawfully stopped and that the vehicle was lawfully searched";

_____

[1] The trial court granted defendant's motion as to the contents of a safe box found in the trunk of his car. That ruling is not in dispute in this case.

thus, the controlled substances found in the car were "law-fully obtained by the state." The court explained its ruling as follows:

"I think it is suspicious that it did take [defendant] a while to pull over. I was watching that video and there were plenty of places to pull over right off I-5 or when he pulled off the exit \*\*\*. \*\*\*

"So, you know, that caught me as—and certainly, it caught Trooper Peterson as being suspicious and that kind of raised his level of suspicion about [defendant] from the get-go.

"The fact that he said he—that Trooper Peterson smelled a very strong odor of marijuana—he didn't just say strong, he said very—and that he believed it was associated with fresh marijuana. That he did not—[defendant] did not have a driver's license; he just had a California ID card. That he, [defendant], said it was a rental vehicle, but he did not have the rental vehicle paperwork and he said his brother \*\*\* had rented the car for him.

"He also observed marijuana in the car from plain view, a bag on the passenger side front seat and another bag on the floorboard behind the passenger seat.

"When asked—when he asked [defendant] where he was coming from, he talked about going back and forth between California and Tacoma, Washington. I was even confused. \*\*\* So that to me seemed to—and the trooper articulated that he thought that was suspicious as well.

"So at that point, I do think that there was reasonable suspicion to extend the traffic stop. If you look at all of the totality of the circumstances, I think that's where you get to the reasonable suspicion. And then \*\*\* with what he saw in terms of the marijuana and the very strong odor of marijuana, he at that point believed that he had probable cause to search the car for the crime of import/export of marijuana.

"He said \*\*\* he didn't know how much marijuana was specifically in the car, but he believed it to—that there was—that he was possibly transporting the marijuana. In fact, [defendant] said that he had brought the marijuana from California.

"So I believe that he did have probable cause to search the car and that then led to the discovery of the other drugs that were ultimately led to [defendant's] current charges."

Defendant entered a conditional plea of guilty to delivery of oxycodone, reserving his right to appeal the trial court's denial of his motion to suppress. The court entered a judgment of conviction as to that one count and dismissed the remaining charges.

Defendant appeals that judgment, assigning error to the denial of his suppression motion. In briefing, defendant argues that Peterson extended the duration of the traffic stop in violation of both Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution because "he did not have reasonable suspicion to question defendant about marijuana trafficking." In the alternative, defendant argues that his arrest was not supported by probable cause, which, in turn, made the warrantless search of his car illegal.[2]

The state responds that the trial court did not err in denying defendant's motion to suppress. The state argues that the extension of the stop was supported by Peterson's reasonable suspicion, which he formed by considering and relying on the following facts:

"(1) [D]efendant took a long time to stop, which in Peterson's experience, is 'associated with possible criminal activity'; (2) defendant did not have a valid driver's license, but was driving a rental car without rental paperwork; (3) defendant was traveling from California, and provided a convoluted story for why he was traveling north, in a rental car; (4) there were two separate bags of marijuana in the vehicle; and (5) there was a 'very strong' odor of fresh marijuana that did not, in Peterson's experience, match up to the amount visible in the vehicle."

---

[2] We note that, during the suppression hearing, defendant argued that Peterson lacked authority to search the vehicle pursuant to the automobile exception because the stop was for a traffic violation. At the time of that hearing, the Oregon Supreme Court was reviewing our ruling in *State v. Bliss*, 283 Or App 833, 390 P3d 1099 (2017), *aff'd*, 363 Or 426, 423 P3d 52 (2018), which held that the automobile exception adopted in *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986), applies when an officer makes a lawful stop for a traffic violation and then develops probable cause to search the vehicle for evidence of criminal activity. Our decision was affirmed, *Bliss*, 363 Or at 438, and defendant does not renew that argument on appeal.

As to defendant's argument that the warrantless search was illegal, the state responds that defendant misconstrues the record because his arrest occurred after Peterson searched the car. In other words, the search was not, in fact, conducted incident to arrest. It was conducted after Peterson developed probable cause to believe that defendant was engaged in the criminal import/export of marijuana.[3]

After the parties submitted their briefs, the Oregon Supreme Court issued its decision in *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), holding that,

> "for the purposes of Article I, section 9, all investigative activities, including investigative inquiries, conducted during a traffic stop are part of an ongoing seizure and are subject to both subject-matter and durational limitations. Accordingly, an officer is limited to investigatory inquiries that are reasonably related to the purpose of the traffic stop or that have an independent constitutional justification."

*Id*. at 712 (footnote omitted). With the benefit of that decision, defendant now argues that Peterson expanded the scope of the traffic stop in violation of Article I, section 9, when he asked defendant questions about matters unrelated to the purpose of the stop.

Under our "first things first" doctrine, "any discussion of a potential federal constitutional violation is premature until we determine 'whether the state's law *** has deprived defendants of the rights they seek to vindicate under the United States Constitution.'" *State v. T. T*., 308 Or App 408, 416, 479 P3d 598 (2021) (ellipses in *T. T.*) (quoting *State v. Babson*, 249 Or App 278, 307, 279 P3d 222 (2012), *aff'd*, 355 Or 383, 326 P3d 559 (2014)). Thus, we first address defendant's arguments based on Article I, section 9,[4]

---

[3] The state correctly notes that defendant has not raised any argument on appeal concerning the lawful application of the automobile exception to the warrant requirement and we, therefore, do not address it further. *See also* 310 Or App at 651 n 2.

[4] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

beginning with the argument that Peterson's inquiry related to the criminal import and export of marijuana was not supported by reasonable suspicion.

In his memorandum of additional authorities, and again at oral argument, defendant argues that, under *Arreola-Botello*, Peterson unlawfully expanded the scope of the traffic stop "[w]hen he veered into asking defendant questions about his travel itinerary and rental car." The state argues that that issue is unpreserved because defendant did not argue below, or in his initial briefing, that the questions about the rental car or travel itinerary were unrelated to the purpose of the traffic stop. We agree with the state that defendant's argument that Peterson unlawfully expanded the scope of the traffic stop when he asked questions about the rental car and defendant's travel plans is unpreserved. *See Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (to be raised and considered on appeal, an issue "ordinarily must first be presented to the trial court").

We ordinarily refrain from proceeding to the question of plain error in the absence of an explicit request to do so. *See, e.g.*, *State v. Hammond*, 218 Or App 574, 583-84, 180 P3d 137 (2008) (not addressing the question of plain error where the "defendant does not argue that the matter in dispute satisfies the requisites of 'plain error' as prescribed in *State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990), and that substantial considerations militate in favor of the affirmative exercise of the discretion"). However, in rare situations, we proceed to that question, despite no request by the appellant, where there have been significant changes in the law between the time of the trial court ruling and the appeal. *See State v. Hallam*, 307 Or App 796, 804, 479 P3d 545 (2020) (so stating). Here, after the trial court ruled, the Oregon Supreme Court decided *Arreola-Botello*, which shifted the focus of our analysis from the unlawful extension of a traffic stop, *see State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010), to the proper scope of a traffic stop, eliminating our "unavoidable lull" doctrine, *Arreola-Botello*, 365 Or at 712. Hence, we consider whether the argument

defendant now makes under the subsequent case law quali-
fies as one of "plain error."

For an error to be "plain," it must satisfy three
requirements: it is (1) "an error of law," (2) "obvious and not
reasonably in dispute," and (3) "apparent on the record without
requiring the court to choose among competing inferences."
*State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If
those requirements are met, we then consider whether to
exercise our discretion to remedy the error. *Ailes v. Portland
Meadows, Inc.*, 312 Or 376, 382, 823 P3d 956 (1991).

In *T. T.*, we held that the youth's argument about
whether certain questions exceeded the purpose of a traffic
stop, in light of *Arreola-Botello*, were "novel" and thus "not
obvious and beyond reasonable dispute." 308 Or App at 419.
It is likewise neither obvious nor reasonably beyond dispute
that Peterson exceeded the purpose of the traffic stop here
when he asked defendant questions about his travel plans
and the rental car. *Cf. Hallam*, 307 Or App at 805 (revers-
ing, notwithstanding the lack of a request for plain-error
review, where the state "essentially concede[d]" that the
trial court plainly erred in light of *Arreola-Botello*). Here,
the error was not plain, and we consider only the issue that
was before the trial court—whether Peterson unlawfully
expanded the traffic stop by questioning defendant about
marijuana.

"Under Article I, section 9, 'an extension of a traf-
fic stop to conduct a criminal investigation must be justi-
fied by reasonable suspicion of criminal activity.'" *State v.
Arivett*, 309 Or App 480, 485, 483 P3d 29 (2021) (quoting
*State v. Barber*, 279 Or App 85, 89, 379 P3d 651 (2016)). The
standard for reasonable suspicion is met "when an officer
can point to specific and articulable facts that give rise to a
reasonable inference that the defendant committed or was
about to commit a specific crime or type of crime." *State v.
Maciel-Figueroa*, 361 Or 163, 165, 389 P3d 1121 (2017). The
officer's subjective belief that a crime was or is about to be
committed must be "objectively reasonable under the total-
ity of the circumstances." *State v. Bowen*, 308 Or App 505,
507, 481 P3d 370 (2021) (citing *State v. Kreis*, 365 Or 659,
665, 451 P3d 954 (2019)).

Here, the parties dispute whether Peterson had reasonable suspicion that defendant had committed or was about to commit the crime of unlawful importation or exportation of marijuana under ORS 475B.227. That statute provides that "[a] person may not import marijuana items into this state or export marijuana items from this state." ORS 475B.227(2). A violation of that section enhances from a violation to a criminal offense if "the importation or exportation *** [c]oncerns an amount of marijuana items that exceeds the applicable maximum amount specified in ORS 475B.337(1)(a) to (f)." ORS 475B.227(4). Here, the relevant statutory provision is ORS 475B.337(1)(c), which provides:

> "[I]t is unlawful for any person 21 years of age or older to possess, knowingly or intentionally:
>
> "*****
>
> "(c)   *More than eight ounces of usable marijuana.*"

(Emphasis added.)

The state argues that "Peterson's observations, combined with his training and experience," give rise to the reasonable inference that defendant had imported, or was about to export, more than the permissible amount of marijuana under Oregon law. According to the state, at the time that Peterson asked defendant about the marijuana odor, Peterson had formed reasonable suspicion based on the following facts: (1) defendant's delay in stopping; (2) defendant's lack of a valid driver's license; (3) defendant's statement that he was driving a rental car and his inability to produce the rental agreement; (4) defendant's travel plans and his "convoluted story for why he was traveling north, in a rental car"; (5) the two separate bags of marijuana in plain view; and (6) the "very strong" odor of "fresh marijuana." We consider those facts individually, and in combination, as we assess the reasonableness of Peterson's suspicion that defendant had engaged, or was preparing to engage, in the crime of marijuana import/export.

We begin by acknowledging that none of the facts upon which the state relies would be sufficient, alone, to support reasonable suspicion to expand the traffic stop to

investigate defendant for criminal import/export of mari-
juana.[5] Even the fact that Peterson observed two separate
bags of marijuana in plain view in defendant's car may not,
by itself, support reasonable suspicion of the crime of mar-
ijuana import/export. And, finally, we recently concluded
that the smell of some marijuana alone is not enough to sup-
port a finding of reasonable suspicion. As we explained:

> "[T]he smell of marijuana * * * generally no longer has the
> significance it once had as a basis for reasonable suspicion,
> in light of decriminalization. * * * [A] strong odor can signal
> the presence of marijuana, but not necessarily the presence
> in a quantity that is illegal for persons 21 and older to law-
> fully possess."

*T. T.*, 308 Or App at 436-37. The question is whether the
facts known to Peterson at the time he began asking defen-
dant about marijuana, viewed together, support a conclu-
sion that he had reasonable suspicion that defendant had
committed or was about to commit the crime of marijuana
import/export.

        Oregon's marijuana laws have been in a state of flux.
Our decisions involving marijuana have necessarily evolved
with the changing law. Our analysis of the facts known
to Peterson, an experienced law enforcement officer, and
whether those facts combined to support reasonable suspi-
cion of criminal marijuana import/export is best explained
by reference to our recent cases concerning the same ques-
tion. In *T. T.*, we concluded that the state trooper had rea-
sonable suspicion of a violation of the same statute at issue
here, which, at the time, prohibited the "importation [and]
exportation of *any amount* of marijuana." 308 Or App at 428,

---

[5] A delay in stopping does not create reasonable suspicion of drug trafficking.
*See State v. Decker*, 290 Or App 321, 331-32, 417 P3d 449 (2018). An unusual story
about travel plans, in the absence of information connecting the "confus[ing]"
story to the crime of drug trafficking, does not support reasonable suspicion for
the unlawful transport of marijuana. *State v. Maciel*, 254 Or App 530, 541-42,
295 P3d 145 (2013). Driving a rental car is not sufficient, by itself, to support
reasonable suspicion of trafficking marijuana. *Arivett*, 309 Or App at 487; *see also
Bowen*, 308 Or App at 510; *T. T.*, 308 Or App at 436. The combination of a rental
car and information that the driver is traveling from another state is insufficient
to establish reasonable suspicion without something more. *T. T.*, 308 Or App at
436. The fact that a person is driving a car registered to a third party on an inter-
state highway does not, by itself, create reasonable suspicion of drug trafficking.
*State v. Meza-Garcia*, 256 Or App 798, 804-05, 303 P3d 975 (2013).

437-38 (emphasis added). Much like this case, the trooper in *T. T.* stopped the defendant's car on Interstate 5 for speeding. *Id.* at 411. After the car pulled over, the trooper walked over to the passenger side of the car and smelled a "strong odor of green, non-smoked marijuana." *Id.* The driver stated that the car was a rental and that he and the passengers were coming from California where they had been for "a couple of days." *Id.* The trooper checked the rental agreement for the car and learned that it had been rented "the day before [at] the Portland airport." *Id.* At that point, the officer asked the driver to "step out of the car." *Id.*

We concluded that those facts were sufficient to support the reasonable inference that the occupants of the car were engaged in drug trafficking. *Id.* at 437-38. Those facts included: (1) "the presence of marijuana"; (2) "what the trooper knew, from his training and experience, about the use of rental cars to traffic drugs along the I-5 corridor"; (3) the fact that "the car had been rented less than 24 hours earlier at the Portland airport"; (4) "the unusually quick roundtrip"—"approximately seven hours each direction—in the same day"; and (5) "the driver's attempt[] to conceal how long they had been in [California]."[6] *Id.* at 437.

In contrast, in *Bowen*, we concluded that the trooper did not have reasonable suspicion to believe that the defendant had committed the crime of unlawful delivery of marijuana. 308 Or App at 511. The trooper stopped the defendant for a traffic violation "while driving on Highway 140 in Lake County." *Id.* at 507. The "[d]efendant was driving a rental car from Grants Pass, Oregon, to Denver, Colorado." *Id.* at 506-07. The trooper smelled the "obvious odor of marijuana" emanating from the car. *Id.* at 507 (internal quotation marks omitted). The defendant appeared nervous when he handed the trooper his driver's license and the rental agreement. *Id.* Based on his training and experience, "the trooper knew that Grants Pass is a 'source city' for marijuana, that Colorado has a market for 'low-cost high-quality marijuana

---

[6] We note that, because the statute at the time prohibited the importation or exportation of any amount of marijuana, our analysis in *T. T.* did not focus on the trooper's description of the smell; rather, "the presence of marijuana," in combination with the facts mentioned, was sufficient to support reasonable suspicion of marijuana trafficking. *T. T.*, 308 Or App at 437.

out of Oregon' and that people 'commonly' use rental cars to unlawfully transport marijuana to avoid the risk of forfeiting their own vehicles if caught." *Id.* Based on that information, the trooper believed he had reasonable suspicion to question the defendant about marijuana. *Id.* We concluded that those facts were insufficient to support reasonable suspicion that the defendant was engaged in the crime of import/export of marijuana. *Id.* at 510. We explained:

> "[T]his case comes down to the marijuana odor that the trooper smelled upon approaching defendant's car. The crux of the issue is whether the odor of marijuana tipped the facts here into the realm of reasonable suspicion. We conclude that it did not—at least on this record, where the evidence was sparse as to what the trooper actually smelled. *** At the time of the stop here, an adult could legally possess up to eight ounces of usable marijuana, *** and could legally deliver up to one ounce of homegrown marijuana to another adult.

> "*** [W]e note that, beyond the odor of marijuana being 'obvious' when the trooper approached defendant's car, there was no evidence as to how strong the odor was. *** There also was no evidence as to whether the odor was of fresh marijuana (as the trooper's suspicion of delivery might suggest) or burnt marijuana (as his consideration whether defendant was impaired or intoxicated might suggest). *** Finally, there was no evidence that the trooper had training or experience that led him to recognize what he smelled as fresh marijuana in a larger quantity."

*Id.* at 510-11.

This case is more like *T. T.* than it is like *Bowen.* The facts, perceived and analyzed by a trained law enforcement officer, included more than just a vague reference to an odor of marijuana. In explaining why he had reasonable suspicion that defendant had, or was about to, import or export marijuana in criminal amounts, Peterson described each of the facts of which he was aware and how, given his law enforcement experience, they fit together. Peterson knew from his training that rental cars are commonly used to transport drugs originating in Northern California "hub[s]" across state lines. He considered that there was a long delay between the time that he activated his overhead lights on

I-5 and the time that defendant eventually stopped at the Burger King; defendant did not have a driver's license; defendant claimed that the car was a rental, but he could not produce a rental agreement; defendant provided him with a convoluted explanation for his trips back and forth between Washington and California; he could see what looked to be several ounces of marijuana in plain view in the car; and he smelled the "very strong" and "extremely strong" odor of marijuana coming from defendant's car.

Peterson testified that his training and experience with drug interdiction work was extensive, including seizing hundreds of pounds of marijuana in the previous year. And he testified that, given the facts of which he was aware, he believed that the amount of marijuana in defendant's car may have been "a criminal amount" from the standpoint of marijuana import/export. That was enough to establish that Peterson had reasonable suspicion that defendant was in violation of ORS 475B.227. Thus, under Article I, section 9, the extension of the traffic stop to ask questions about marijuana was lawful.

The extension of the traffic stop was also lawful under the Fourth Amendment. Absent reasonable suspicion, a traffic stop justified only by the observed traffic violation "become[s] unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 575 US 348, 350-51, 135 S Ct 1609, 191 L Ed 2d 492 (2015) (internal quotation marks omitted) (police may not extend an otherwise completed traffic stop, absent reasonable suspicion, in order to conduct a "dog sniff"). When other factors combine, as they did here and as we have already discussed, to create reasonable suspicion of criminal activity, extension of the traffic stop under the Fourth Amendment is permitted.

We turn briefly to defendant's argument that Peterson was not authorized to conduct a warrantless search of his car incident to his arrest. Defendant argues that, because Peterson did not have probable cause to arrest him for the crime of marijuana import/export, the warrantless search of his car was illegal. The state correctly argues that the search occurred prior to defendant's arrest and that,

in fact, the search was conducted on the basis of probable cause existing at the time of the search and the automobile exception to the warrant requirement. The trial court found that Peterson had searched defendant's car pursuant to that exception and based upon probable cause of drug trafficking. The arrest came after Peterson found cocaine in the trunk, and we do not understand the state to rely on the arrest to support the warrantless search. Defendant does not renew his argument here regarding the lawfulness of the search on the basis of probable cause existing at the time of the search or the applicability of the automobile exception. Because that question is not before us, we do not address it.

We conclude that the trial court did not err when it denied defendant's motion to suppress. Peterson had reasonable suspicion of the criminal import/export of marijuana based on the very strong smell of fresh marijuana in combination with all the other factors we have discussed. The extension of the traffic stop was lawful under both Article I, section 9, and the Fourth Amendment. And, finally, we reject defendant's argument that the warrantless search of his car was unlawful as a search incident to arrest.

Affirmed.